[No. 255-2.    Division Two.    June 30, 1971.]

SAMUEL P. BELL, *Respondent,* v. CARL D. MCMURRAY *et al.,*
*Appellants.*

*Mark G. Honeywell* (of *Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson*), for appellants.

*Don M. Gulliford* (of *Rutherford, Kargianis & Austin*),
for respondent.

PEARSON, J.—In a trial to the court, the plaintiff, Samuel P. Bell, was granted judgment against the defendants, Carl D. McMurray and wife, and Donald D. Averette and wife. The judgment was for property damage to Mr. Bell's pickup truck, sustained in a 1968 collision on Interstate Highway 5, near the Delin Street overpass in Tacoma, Washington.

Only the defendants McMurray appeal from the judgment. The appeal raises issues relating to the applicability of the "rescue doctrine" and/or the "emergency doctrine," as well as an issue of proximate causation.

The factual setting for this lawsuit, based upon a resolution of factual disputes in plaintiff's favor, is as follows. On February 17, 1968 at approximately 12:30 p.m., plaintiff was driving his 1966 pickup custom camper in a northerly direction on the freeway, in the middle lane, at about 50 to 55 miles per hour. The freeway near the point of the collision has three concrete, northbound lanes and two asphalt exit lanes leading to the Mt. Rainier and city of Tacoma offramps. The appellant, Lucille M. McMurray, operating a Dodge automobile and occupying the outside driving lane (nearest the exit lanes), had just passed plaintiff's truck on the right. It was a dark day, raining heavily, and the roadway surface was extremely slippery. Most vehicles were operating with the lights on, as was plaintiff. When appellant reached a point approximately 15 feet ahead of plaintiff, her car suddenly went into a sideway skid, with its rear end veering to the right. To avoid what he thought would be a collision with the McMurray vehicle, plaintiff swerved to the left, losing control of his truck, which spun around and lodged against the guardrail on the extreme left edge of the highway, facing southerly. In its stopped position the front portion of the vehicle protruded 2 to 4 feet into the 12-foot inside lane for northbound traffic.

At this point, plaintiff and his passenger, James Whannell, exited the vehicle and ran across the freeway to where the McMurray vehicle was wrapped around a roadside pole, virtually sheared in half. Plaintiff testified that

he turned off the ignition of his truck prior to leaving it, but left on the headlights, which were pointing toward oncoming traffic. He testified that his vehicle was still operable at this time.

His reasons for leaving his truck in that precarious position were threefold:

(1) the McMurray vehicle was smoking and he thought it might momentarily catch fire, endangering its injured occupants;

(2) he believed it would be "suicide" to attempt to move the car across the three driving lanes in the face of approaching traffic, which appeared to be 300 to 400 feet away;

(3) he believed it was personally hazardous to remain in the vicinity of his truck.

Upon arriving at the McMurray vehicle, plaintiff and his passenger proceeded to assist others in extricating Mrs. McMurray and her son from the badly damaged vehicle. Both were seriously injured. Mrs. McMurray was bleeding badly and her young son was "hollering" from the inside of the vehicle when they arrived.

Almost immediately after the accident, a towing truck stopped near the McMurray vehicle and its operator exhibited flashing lights and put out flares on the easterly side of the roadway. Plaintiff testified that although his truck was equipped with nighttime flares, he did not take time to exhibit them because of his concern for rendering immediate assistance to injured persons. During the time plaintiff was rendering such assistance, his truck was struck by an automobile driven by the defendant, Donald G. Averette. While it had sustained approximately $100 damage in its initial impact with the guardrail, the pickup camper was rendered a total loss as a result of this second impact. The time sequence between the two occurrences was not established with certainty, although the trial court had competent testimony from which it could reasonably find that the second impact occurred between 3 and 10 minutes following the first accident.

One of the investigating State Patrol officers, who examined the McMurray vehicle after the accident, testified that its tires were so devoid of tread as to render the vehicle unsafe for travel under the existing road conditions.

In allowing plaintiff damages jointly and severally against the defendants McMurray and Averette, the trial court found and concluded that (1) both defendants were "jointly and concurrently negligent" and (2) plaintiff was not guilty of contributory negligence in leaving his vehicle partly obstructing the inside lane.

On the latter issue, the appellants McMurray contend that the trial court erred in failing to find plaintiff guilty of contributory negligence as a matter of law. The thrust of their contention is that plaintiff was negligent as a matter of law in leaving his truck on the driving portion of the freeway in violation of RCW 47.52.120, which provides in part as follows:

> After the opening of any limited access highway facility, it shall be unlawful for any person . . . (5) to stop or park any vehicle or equipment within the right of way of such facility, including the shoulders thereof, except at points specially provided therefor, and to make only such use of such specially provided stopping or parking points as is permitted by the designation thereof: *Provided,* That this subsection shall not apply to authorized emergency vehicles, law enforcement vehicles, or to vehicles stopped for emergency causes or equipment failures; . . .

The argument is that even though plaintiff did not voluntarily stop on the freeway, he was in violation of the statute for failing to remove his vehicle from the freeway when "he had ample time to do so."

Plaintiff contends that his violation of the statute, if any, was properly excused by application of either the "emergency doctrine" or the "rescue doctrine," both of which presented factual issues which the trial court was justified in resolving in his favor. It is our view that if either or both of these doctrines applies to the factual setting of this

case, the determination of the trial court on this issue must be affirmed.

We consider first the so-called "rescue doctrine" since there was testimony that plaintiff left his vehicle partly on the roadway, primarily because of his concern for assisting the injured persons in the McMurray vehicle. Does such testimony support application of the "rescue doctrine" so as to excuse the violation of the statute, or make it inapplicable? We believe that it does. The statute specifically excludes "emergency causes." It is our view that the "rescue doctrine," if applicable, qualifies as an "emergency cause" within the statute.

*French v. Chase*, 48 Wn.2d 825, 297 P.2d 235 (1956) sets forth the necessary elements for applicability of the "rescue doctrine" at page 830:

> On the basis of these cases, we hold that, in this jurisdiction, the rescue doctrine, as it is applied to situations of this kind, includes the following elements:
>
> (1)   There must be negligence on the part of the defendant which is the proximate cause of peril, or what would appear to a reasonable person under the circumstances to be peril, to the life or limb of another.
>
> (2)   The peril, or reasonable appearance of peril, to the life or limb of another must be imminent.
>
> (3)   In determining whether the peril, or appearance of peril, is imminent, in the sense that an emergency exists requiring immediate action, the circumstances presented to the rescuer must be such that a reasonably prudent man, under the same or similar circumstances, would determine that such peril existed. (The issue of whether the rescuer's determination conformed with the reasonably prudent man standard is a question for the jury, under proper instructions.)
>
> (4)   After determining that imminent peril to the life or limb of a person exists, the rescuer, *in effecting the rescue,* must be guided by the standard of reasonable care under the circumstances. (Whether there has been conformance with this standard also is a question for the jury, under proper instructions.)

It is our view that the instant case involved issues of fact on each element of the "rescue doctrine" and the trial court

was well within its province as trier of the facts to resolve those issues in plaintiff's favor.

Appellants next argue that even though plaintiff was not guilty of contributory negligence, the negligence of defendant Averette intervened and superseded the negligence of appellant and was so far removed therefrom that the subsequent damage to plaintiff's truck was not a foreseeable consequence of, or not proximately caused by appellant's negligence.

■ Washington has long held that if an intervening or subsequent cause is foreseeable, the chain of proximate causation is not broken. The test applicable is whether or not in the natural course of events the appellant should have known the intervening act was likely to happen. *See Qualls v. Golden Arrow Farms, Inc.*, 47 Wn.2d 599, 288 P.2d 1090 (1955).

Disposition of the question of foreseeability in this type of setting was put to rest many years ago by the Supreme Court and it is our view that the question of proximate cause was clearly a question for the trier of facts. As long ago as *Thornton v. Eneroth*, 177 Wash. 1, 30 P.2d 951 (1934), it was held on similar facts that a jury question is presented on whether or not the initial negligence starts a chain of events which is not completed until the final collision.

In *Caylor v. B. C. Motor Transp., Ltd.*, 191 Wash. 365, 71 P.2d 162 (1937) Judge Steinert stated the applicable rule succinctly at page 377:

> When the negligence of one person concurs with that of another to produce the proximate cause of injury to a third person, each of the persons found to be negligent is chargeable as if solely responsible for such cause. [Citations omitted.]

It may be true, as appellant argues, that in certain circumstances successive collisions may be so separated by either time or circumstances as to constitute separate negligent acts, so that social or judicial policy should relieve one party from a portion of the loss caused by the fault of

another. *See Young v. Dille*, 127 Wash. 398, 220 P. 782 (1923), and 100 A.L.R.2d 16 (1965). However, here the appellant's negligent act, with its consequences to plaintiff's vehicle, in our view places within the reasonable range of probability the general type of harm sustained by plaintiff in the second collision.

Neither the elapse of time nor the circumstances surrounding this case warrant a determination as a matter of law that plaintiff's damages should, as a matter of judicial policy, largely fall upon the defendant, Averette. Proximate cause, while being a mixed question of law and fact, is usually for the trier of facts, unless the evidence is undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion. *Caylor v. B. C. Motor Transp., Ltd., supra.* The trial court was well within announced judicial policy, as well as having substantial evidence to support its determination that defendants were jointly and severally liable for the entire damage suffered by plaintiff.

Judgment affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.